UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
FEDERAL INSURANCE CO. a/s/o
ELCO LIMITED, INC.,

          Plaintiff,

     -against-

SF EXPRESS CORPORATION, TOTAL
QUALITY LOGISTICS LLC and
MUKOMA FAMILY LLC,

          Defendants.
```

21-cv-5539 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiff Federal Insurance Co. is the subrogated cargo underwriter for Elco Limited, Inc. ("Elco"). Elco purchased 1,025 cartons of facemasks from companies in China and arranged for them to be shipped to its warehouse in Minnesota. At some point between the facemasks' arrival in the United States and their delivery at Elco's facilities, 29 of the cartons were lost. Plaintiff brings this action against three defendants that it alleges were carriers contracted to deliver the facemasks to Elco's warehouse. Now before the Court is the motion to dismiss of one of those alleged carriers, Total Quality Logistics LLC ("TQL").

**BACKGROUND**

In early May 2020, plaintiff's assured, Elco, purchased a total of 1025 cartons of disposable non-surgical face masks, on

1

consignment, from a supplier in Wuxi, China. ¶¶ 2, 7-8.[1] Thereafter, Elco contracted with defendant SF Express Corp. ("SF") to arrange the transportation of the two consignments of facemasks from China to Elco's distribution warehouse, located at a Federal Express facility in Edina, Minnesota. ¶¶ 3, 9.

After the consignments arrived in the United States and were taken to SF's facility in New York, TQL issued its own bill of lading covering the on-carriage of the cartons from SF's facility to the ultimate destination in Minnesota. ¶¶ 4, 14-15. Thereafter, the goods were carried to Elco's warehouse in Minnesota by defendant Mukoma Family LLC ("MFL"). ¶¶ 5, 13. When the shipments arrived, there was a shortage of 29 cartons of facemasks. ¶ 15.

On June 24, 2021, plaintiff filed suit against defendants SF, MFL and TQL alleging in twelve separate causes of action that, by failing to deliver the facemasks, each of the three defendants (1) breached its contract with Elco; (2) is subject to Carmack Amendment Liability; (3) breached its duty as a bailee to Elco; and (4) was negligent. See ECF No. 1. Now before the Court is defendant TQL's motion to dismiss all claims against TQL — that is, Counts Five (breach of contract), Six (Carmack Amendment

---

[1] Citations to ¶ __ are to plaintiff's complaint, ECF No. 1.

Liability), Seven (breach of bailment), and Eight (negligence)—for failure to state a claim. Id.

## LEGAL STANDARD

On a 12(b)(6) motion to dismiss, we "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiffs' favor." Giunta v. Dingman, 893 F.3d 73, 78-79 (2d Cir. 2018). Conclusory allegations and "[t]hreadbare recitals of the elements of a cause of action," however, are not entitled to the presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[2]

## DISCUSSION

I. Carmack Amendment Claim

The Carmack Amendment "addresses the subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the actual loss or injury to their property caused by any of the carriers involved in the shipment." Cleveland v. Beltman N. Am. Co., 30 F.3d 373, 377 (2d Cir. 1994). Although the statute holds carriers strictly liable, "courts have repeatedly held that the Carmack Amendment does not apply to brokers." Active Media Servs., Inc. v. CAC Am. Cargo Corp., 2012 WL 4462031, at *3

---

[2] Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

(S.D.N.Y. Sept. 26, 2012). TQL moves to dismiss plaintiff's Carmack Amendment claim on the ground that TQL acted as a broker in connection to the shipment of Elco's two consignments and thus is not subject to liability under the Carmack Amendment.

"The difference between a carrier and a broker is often blurry." AIG Europe (Netherlands), N.V. v. UPS Supply Chain Sols., Inc., 765 F. Supp. 2d 472, 483 (S.D.N.Y. 2011). "Indeed, if a party accepted responsibility for ensuring delivery of the goods, regardless of who actually transported them, then the party qualifies as a carrier." Covenant Imaging, LLC v. Viking Rigging & Logistics, Inc., 2021 WL 973385, at *3 (D. Conn. Mar. 16, 2021). "If however the party merely agreed to locate and hire a third party to transport the [goods], then it was acting as a broker." Id. (citing 49 C.F.R. § 371.2(a)).

In the complaint, plaintiff alleges that "Defendant TQL received the two subject consignments . . . acting as an interstate motor common carrier." ¶ 52. More specifically, plaintiff alleges that TQL "issued [its] own bill of lading covering the on-carriage of the 1,025 cartons from SF premises in New York to the ultimate destination in Edina, MN" and that the truckloads were carried and delivered "pursuant to the bills of lading issued by Defendants SF and TQP." ¶¶ 14-15. Although the issuance of a bill of lading alone may be insufficient to establish carrier status on summary judgment, it is a factor that supports a finding that the issuer

4

acted as carrier. See Indem. Ins. Co. of N. Am. v. Expeditors Int'l of Washington, Inc., 2019 WL 6842073, at *3 (S.D.N.Y. Dec. 16, 2019). As such, the allegation that TQL issued a bill of lading supports a reasonable inference that TQL assumed legal responsibility for the delivery and was thus a carrier for purposes of Carmack liability.[3] This is sufficient to survive a motion to dismiss. Accordingly, TQL's motion is denied with respect to Count Six.

II. State Law Claims

"The Carmack Amendment preempts all state law on the issue of interstate carrier liability." Aviva Trucking Special Lines v. Ashe, 400 F. Supp. 3d 76, 79 (S.D.N.Y. 2019) (citing Adams Express Co. v. Croninger, 226 U.S. 491, 505-06 (1913)). TQL moves to dismiss Counts Five, Seven, and Eight, which allege liability on the basis of breach of contract, breach of bailment, and negligence, respectively, on the grounds that they assert state law claims that fall within the Carmack Amendment's preemptive

---

[3] In support of its motion to dismiss, TQL points to various documents outside of the complaint that it characterizes as establishing that TQL functioned only as a broker. However, in deciding a motion to dismiss, the Court "may not consider documents in the record, such as affidavits, unless they are incorporated in, or otherwise integral to, the complaint." Pro. Staff Cong./CUNY v. Rodriguez, 2020 WL 9809986, at *1 (S.D.N.Y. Nov. 9, 2020) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). The Court therefore does not consider these extrinsic documents in evaluating the motion to dismiss.

scope. At oral argument, plaintiff conceded that these claims are preempted. <u>See</u> Transcript of September 29, 2021 Hearing at 8:20-24. Accordingly, TQL's motion to dismiss is granted with respect to Counts Five, Seven, and Eight.

## CONCLUSION

For the foregoing reasons, the Court grants TQL's motion to dismiss with respect to Counts Five, Seven, and Eight, and denies the motion with respect to Count Six. The Clerk of the Court is directed to close document number 18 on the docket of this case.

SO ORDERED.

Dated:  New York, NY

October 4, 2021

_____
JED S. RAKOFF, U.S.D.J.